UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| C.H. ROBINSON WORLDWIDE, INC., a corporation, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) 11 C 105 ) |
| AUSTER ACQUISITIONS, LLC, d/b/a THE AUSTER COMPANY, INC., a corporation, et al., | ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the Court after the filing of numerous claims, objections, and motions to determine the validity of claims. The claims, objections, and motions to determine validity are granted in part and denied in part.

### BACKGROUND

On January 7, 2011, Plaintiff C.H. Robinson Worldwide, Inc. ("C.H. Robinson") filed a complaint against Defendants Auster Acquisitions, LLC d/b/a The Auster Company, Inc. ("Auster"), Tom Bastounes, Paul Duggan ("Duggan"), and The Estate of Dennis F. Nardoni, individually and in their corporate capacities, and Standard Bank and Trust Co. ("Standard Bank"), seeking enforcement of a trust pursuant to the

Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499(c)(4). Since a similar complaint was later filed by Jack Tuchten Wholesale Produce, Inc. ("Jack Tuchten"), on March 18, 2011, this Court consolidated the two cases.

On January 27, 2011, this Court entered a Consent Order for Appointment of Receiver and for Establishing PACA Trust Claims Procedure (the "Procedures Order"). *See* Dkt. No. 51. In the Procedures Order, this Court appointed a receiver ("Receiver") to collect Auster's current receivables, auction equipment and vehicles, sell inventory, and prevent further dissipation of PACA Trust Assets. The Procedures Order also set forth the requirements for creditors to claim trust rights under PACA and against Auster. Specifically, the Procedures Order required purported PACA trust claimants, on or before March 28, 2011, to: (1) file a verified PACA proof of claim; (2) file a Complaint in Intervention; and (3) serve the proof of claim, Complaint in Intervention, and supporting documentation on the parties in this case. The Procedures Order warned that untimely claims would be forever barred.

On April 4, 2011, this Court entered an order resetting the schedule for the PACA Trust Claims Procedure and requiring those served with Standard Bank's discovery to respond by April 13, 2011 (the "Rescheduling Order"). *See* Dkt. No. 186. The Rescheduling Order reset the deadlines as follows:

| DEADLINE | DATE |
| --- | --- |
| Deadline to Issue Notice of Deadlines | February 21, 2011 |
| Deadline to File PACA Proof of Claim and Complaint in Intervention | March 28, 2011 |
| Deadline to Respond to Discovery Served by Standard Bank | April 13, 2011 |
| Deadline to File Objections to Claims | May 4, 2011 |
| Deadline to File Responses to Objections | May 18, 2011 |
| Deadline to File Motion to Determine Validity of Claim | June 1, 2011 |
| Deadline to File PACA Trust Chart | June 15, 2011 |
| Deadline to File Objections to PACA Trust Chart | June 22, 2011 |
| Deadline for Interim Distribution | June 29, 2011 |

Numerous parties filed objections to claims and the PACA Trust Chart and motions to determine the validity of claims. This Court addresses all outstanding objections below.

**LEGAL STANDARD**

PACA mandates that perishable agricultural commodities received by a merchant, dealer, or broker, as well as the sales proceeds from such commodities, are held in trust for the benefit of unpaid suppliers until full payment has been made.

7 U.S.C. § 499e(c)(2). The trust is automatically created when the merchant, dealer, or broker accepts the goods as long as the supplier complies with certain notice requirements. *Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir. 2002).

## DISCUSSION

This Court confirms the validity of all claims not addressed in this Opinion, as described in the "amount deemed valid" column of the PACA Trust Chart filed by the Receiver on June 15, 2011. *See* Dkt. No. 335-1.

**I. Objections Filed by Duggan and Standard Bank**

On May 4, 2011, Duggan and Standard Bank filed nearly identical objections to various PACA proof of claims. *See* Dkt. Nos. 249, 250, 258, 259.

**A. First Omnibus Objection**

Duggan's and Standard Bank's First Omnibus Objection (the "First Omnibus Objection") attacks the claims filed by C.H. Robinson, Dayka & Hackett, E.J.'s Produce Sales, Inc. ("E.J.'s Produce"), Jack Tuchten, New Era Produce, LLC ("New Era"), Produce Plus, Inc. ("Produce Plus"), Scattaglia Growers & Shippers, LLC ("Scattaglia"), Tom Lange Company ("Tom Lange"), and Jack Brown Produce ("Jack Brown") (collectively, the "First Omnibus Objection Claimants"). Duggan and Standard Bank object to the claims of the First Omnibus Objection Claimants, arguing that the claimants forfeited the protections of the PACA trust by entering into post-

default agreements with Auster which extended the payment period beyond the 30 day maximum.[1]

The PACA trust arises when the merchant, dealer, or broker accepts the goods as long as the supplier complies with notice requirements. *Patterson*, 307 F.3d at 669. A supplier, however, forfeits its trust rights if the supplier enters into a written post-default agreement with the dealer that extends the time for payment beyond 30 days.[2] *Id.* at 669, 671 (holding that "PACA rights are lost whenever the parties enter into a written agreement that satisfies the Statute of Frauds"). Unlike a written post-default agreement, "an oral agreement for an extension or a course of dealing allowing more than 30 days for payment will not abrogate a PACA trust." *Id.* at 669.[3]

---

[1] Standard Bank also argues that this Court should deny the claims because the First Omnibus Objection Claimants failed to fully comply with the Court's Rescheduling Order by failing to produce checks from Auster. Standard Bank's argument lacks merit for several reasons. First, the Court's Rescheduling Order merely required the claimants to respond to Standard Bank's discovery by April 13, 2011, and did not specifically require the claimants to produce checks. Further, this Court cannot determine whether the claimants should have produced checks from Auster, as Standard Bank failed to attach the relevant discovery request to its objection. Finally, Standard Bank concedes that it maintained copies of such checks in its files and this Court will not deny a claim based on the failure to produce documents already within Standard Bank's possession and control.

[2] As of April 13, 2011, the amended PACA regulations now state that a seller retains its trust rights even if it enters into a post-default agreement or accepts partial payment for a past due amount. 7 C.F.R. § 46.46(e)(3). Because the PACA amendment post-dates the events in this case, this Court evaluates any alleged post-default agreements under the prior standard stated in *Patterson*.

[3] Duggan and Standard Bank, relying on *Am. Banana Co. v. Republic Nat'l Bank of New York*, 362 F.3d 33 (2d Cir. 2004), argue that a seller forfeits the PACA trust protections by entering into a post-default agreement orally or in writing. The Second Circuit's approach conflicts with the Seventh Circuit's approach and this Court must follow the law as stated by the Seventh Circuit in *Patterson*.

Duggan and Standard Bank argue that the First Omnibus Objection Claimants forfeited their trust rights by entering into oral agreements with Auster and routinely accepting payments from Auster for invoices that were more than 30 days past due. Failing to point to a written agreement, Duggan and Standard Bank instead identify documents, such as cashed checks, which demonstrate that the First Omnibus Objection Claimants regularly accepted payments that were more than 30 days past due. Duggan's and Standard Bank's arguments lack merit because the Seventh Circuit has specifically held that oral agreements and courses of dealing do not abrogate the PACA trust. *Patterson*, 307 F.3d at 669 (explaining that no post-default agreement exists even where the evidence demonstrates that a supplier has routinely allowed the dealer more than 30 days to make payment). The fact that the claimants accepted, as a course of dealing, payments for some invoices more than 30 days past due does not establish that the claimants had a written, post-default agreement to accept late payments for the amounts claimed in this action and for which claimants seek to invoke their PACA trust rights.[4] To prove that the claimants forfeited their PACA trust rights, Duggan and

---

[4] As an example, Duggan and Standard Bank rely on a fax sent from Scattaglia to Auster on December 15, 2010, which listed the amounts Auster owed Scattaglia. In the fax, Scattaglia demanded payment for numerous invoices more than 30 days past due. The fax, merely a demand for payment, does not evidence a written agreement between Auster and Scattaglia that Auster promised to pay Scattaglia a certain amount by a certain date. *See, e.g., Patterson* 307 F.3d at 671 (finding that written repayment plan which identified the contract's subject matter and payment terms constitutes a written post-default agreement which abrogated the PACA trust). Even if Auster paid those past due amounts, that course of dealing does not eliminate Scattaglia's trust rights with respect to other amounts still due from separate transactions.

Standard Bank must identify a written, post-default agreement in which Auster agreed to make certain payments at a certain time to satisfy invoices more than 30 days past due, demonstrate that Auster failed to make the promised payments, and establish that claimants now attempt to enforce their PACA trust rights with respect to those past due invoices. Because Duggan and Standard Bank fail to do so, this Court finds that the First Omnibus Objection Claimants did not forfeit their PACA trust rights by entering into written, post-default agreements.

B.  **Second Omnibus Objection**

Duggan's and Standard Bank's Second Omnibus Objection (the "Second Omnibus Objection") attacks the claims filed by Central Washington Marketing, Inc. ("Central Washington"), Michael J. Navilio & Son, Inc. ("Navilio"), Jack Brown, and Quality Food Products, Inc. ("Quality Food").[5]  *See* Dkt. Nos. 250, 259.  The Second Omnibus Objection seeks to invalidate the claims based on the claimants' failures to respond to Standard Bank's discovery by April 13, 2011.  Navilio, Jack Brown, and Quality Food argue that they have responded to the discovery and that neither Duggan nor Standard Bank have suffered prejudice from their delay. Since Duggan and Standard Bank do not argue any resulting prejudice from the delay, this Court declines to invalidate the claims.

---

[5] This Court addresses the objections to Central Washington's claim below.

### C. Objection to Central Washington's Claim

Duggan and Standard Bank object to Central Washington's claim for two reasons. *See* Dkt. Nos. 250, 251, 259, 261. First, Central Washington violated the Rescheduling Order by failing to respond to Standard Bank's discovery. Central Washington does not respond to this objection and, to the Court's knowledge, never responded to the discovery. Second, Central Washington violated the Procedures Order by failing to file a Complaint in Intervention. The Procedures Order required Central Washington to file a Complaint in Intervention and Central Washington failed to do so. Again, Central Washington did not respond to this objection. Because Central Washington failed to comply with the Rescheduling Order and the Procedures Order or respond to these objections, this Court finds that Central Washington's claim is not valid.

### D. Objection to Tom Lange's Claim

Duggan and Standard Bank object to $25,523.50 of the Tom Lange claim for two reasons. *See* Dkt. Nos. 252, 263. First, according to Tom Lange's invoice, Auster owes Tom Lange $25,523.50 for 2,550 cartons of blueberries when Tom Lange, in fact, only delivered 2,300 cartons of blueberries. Tom Lange agrees that it delivered only 2,300 cartons of blueberries. Tom Lange's claim for the blueberries is thus inflated because it charges Auster for 2,550, rather than 2,300, cartons of blueberries.

Second, Duggan and Standard Bank argue that Tom Lange's claim for $25,523.50 is further invalid because the blueberries were spoiled. To the extent perishable items are spoiled and unsold, the trust res disappears and any obligation to pay for those unsold goods lies outside the PACA Trust provisions. *In re Zois*, 201 B.R. 501, 509 (Bankr. N.D. Ill. 1996). Tom Lange does not dispute the fact that at least some of the blueberries were spoiled. Tom Lange states that Auster planned to sell some of the blueberries and that Tom Lange and Auster would later agree on a fair price. Because Tom Lange never received a report from Auster concerning the number of blueberries sold, Tom Lange claims that Auster owes an estimated price of $25,523.50. Tom Lange purportedly bases the estimated price on the U.S. Department of Agriculture Market News Report for blueberries less average percentages of condition defects as established by USDA inspection certificates. Tom Lange, however, fails to precisely show how it calculated a claim of $25,523.50 for the spoiled blueberries. For this reason, this Court denies Tom Lange's claim for the blueberries and reduces Tom Lange's claim by $26,605.98, the total amount claimed for the blueberries (including accrued interest).

### E. Objection to Domex's Claim

Duggan and Standard Bank object to $6,500 of the claim of Domex Superfresh Growers, LLC ("Domex"), arguing that the amount is for freight charges which do not qualify for PACA trust protection. *See* Dkt. Nos. 253, 260. On January 4, 2011,

Domex was unable to deliver apples and pears ordered by Auster because Auster stopped operating after the order was placed and the load was shipped. To mitigate its damages, Domex paid the carrier of the produce the freight charges associated with shipping and returning the produce to Domex for resale. Domex argues that the freight charges are recoverable because the PACA trust extends to non-produce charges owed in connection with the underlying produce transaction. Even accepting Domex's position, the PACA trust arises only when the commodities are received by the merchant, dealer, or broker. *See* 7 U.S.C. § 499e(c)(2); *see also Patterson*, 307 F.3d at 669. Since Auster never accepted and received the produce, Domex cannot recover the freight charges under PACA. Accordingly, this Court reduces Domex's claim by $6,500 to $259,355.08.

### F. Objection to Emerald Packing's Claim

Duggan and Standard Bank object to part of the claim of Emerald Packing Company, LLC ("Emerald Packing"), arguing that the invoices attached to Emerald Packing's proof of claim do not correspond to agreed upon price modifications between Emerald Packing and Auster. *See* Dkt. Nos. 256, 262. Duggan and Standard Bank support their objection by attaching invoices from Emerald Packing which include handwritten modifications. Because Emerald Packing does not respond to this objection, this Court accepts the objection and reduces Emerald Packing's claim to $201,836.40.

## II. Objections to PACA Trust Chart

### A. Nico Mexi's Claim

Nico Mexi filed a PACA proof of claim in the amount of $92,371.74. Pursuant to an objection, Nico Mexi agreed to reduce its claim by $8,669.50 to $83,702.24. *See* Dkt. No. 321. According to the PACA Trust Chart, the Receiver offset Nico Mexi's claim in the amount of $80,963.06 due from Nico Mexi and owing to Auster. *See* Dkt. No. 335-1. Further, the Receiver did not account for the agreed upon reduction by Nico Mexi. For these reasons, the PACA Trust Chart lists Nico Mexi's claim in the amount of $11,408.68. Nico Mexi objects to the Receiver's offset because the Receiver never provided proof to Nico Mexi of the amount allegedly owed to Auster and never objected to Nico Mexi's claim. *See* Dkt. No. 340. This Court agrees with Nico Mexi that the Receiver cannot offset Nico Mexi's claim unless the Receiver provides proof to Nico Mexi of the amount owed to Auster. Unless and until the Receiver provides such proof, this Court finds that Nico Mexi's claim is valid in the amount of $83,702.24.

### B. Quality Food's Claim

Quality Food filed a PACA proof of claim in the amount of $68,442.48. According to the PACA Trust Chart, the Receiver offset Quality Food's claim in the amount of $18,199.97 due from Quality Food and owing to Auster. *See* Dkt. No. 335-1. Quality Food objects to the Receiver's offset and argues that the statement of amounts due from Quality Food does not properly reflect certain credits. Based on the exhibits

attached to Quality Food's objection, this Court finds that the Receiver should credit Quality Food for payments made in full on Invoice Nos. 111038, 1211047, and 1242867. Further, since Quality Food lacks documentation concerning the remaining amounts allegedly owed by Quality Food, the Receiver must provide Quality Food with copies of Invoice Nos. 1155439, 1163836, 1197261, and 1208155, so that the parties may determine whether Quality Food owes the amounts stated in those invoices. Accordingly, this Court finds that the Receiver's offset is at least partially invalid and orders the parties to confer regarding the amount owed by Quality Food. If the Receiver provides invoices supporting the amounts allegedly owed by Quality Food and Quality Food fails to prove that it paid those invoices, then the Receiver may offset Quality Food's claim by the amount owing from Quality Food to Auster.

## III. Objection to Reasonableness of Attorneys' Fees

The Tom Lange Group[6] and Standard Bank have expressly reserved the right to challenge the reasonableness of attorneys' fees claimed by numerous claimants.[7] *See* Dkt. No. 254, 265. No party has objected to the right of claimants to recover reasonable

---

[6] The Tom Lange Group consists of Tom Lange, Dayka & Hackett, E.J.'s Produce, Domex, Hughes Produce Sales, Inc., New Era, Scattaglia, and T.J. Produce, Inc.

[7] The Tom Lange Group reserved the right to challenge the reasonableness of the fees claimed by Mandolini Company, Produce Plus, Ruby Robinson Co., Inc., C.H. Robinson, Dietz & Kolodenko Co., Veg-Pro, Inc., Quality Food, Jack Tuchten, Strube Celery and Vegetable Company, Durango Products, Inc. d/b/a Junior Produce, Everyday Fresh Produce, Evergreen International, Inc., J.L. Gonzalez Produce, Inc., Keith Connell, Inc. Nico Mexi, and Veg Fresh, Inc. *See* Dkt. No. 254. The Tom Lange Group subsequently withdrew its objection to the attorneys' fees claimed by Mandolini Company, Inc., in the amount of $1,584.00. *See* Dkt. No. 325.

attorneys' fees. Most claimants have agreed to provide proof of their attorneys' fees and collection costs and ask this Court to establish a procedure by which redacted fee records may be furnished. Accordingly, this Court orders each party requesting attorneys' fees to file a request with the Court stating the amount of attorneys' fees claimed and produce to the objecting parties copies of their records within thirty (30) days from the date of this Order. The records must redact any information protected by the attorney-client privilege or work product doctrines. Any objecting party then has fifteen (15) days to file an objection with this Court. If no party objects to the claims for attorneys' fees, then the Receiver may treat the claims as valid.

## CONCLUSION

This Court grants in part and denies in part the claims, objections, and motions to determine validity of the claims. Further, this Court makes such orders as stated in this Opinion to resolve the claims of Nico Mexi and Quality Food. Finally, the parties requesting attorneys' fees are ordered to file a request stating the amount of the fees and produce redacted copies of their records by August 29, 2011. Parties objecting to the attorneys' fees have until September 12, 2011 to file their objections.

_Charles P. Kocoras_
Charles P. Kocoras
United States District Judge

Dated:   July 26, 2011